THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent, v. CHARLES VON GLAHN, Appellant. ·

*Court of Appeals, October 25, 1887.*

Affirming same case, 36 Hun, 643, Mem.

*Mortgages. Taxes.*—Where a mortgage requires the mortgagor to pay all taxes and assessments, and upon his default empowered the mortgagee to pay the same "with any expense attending," and made the amount so paid a lien upon the premises; and where, in an action to foreclose the mortgage, the mortgagee employed a searcher to examine and determine what were legal taxes and assessments, and see that proper deductions were made for the illegal charges, agreeing to give him a certain proportion of the amount he succeeded in having deducted, and paid the legal liens and the percentage so agreed upon, the latter is a proper item of expense, and became on payment a lien upon the premises; and a tender not including the amount of this item was insufficient.

Appeal from a judgment of the general term of the supreme court, reversing the judgment of the special term in favor of defendant, and directing a new trial.

*F. H. Smith,* for appellant.

*G. Waddington,* for respondent.

EARL, J.—On the 1st day of November, 1869, the defendant Doscher, owning certain real estate in the city of Brooklyn, executed to the plaintiff a mortgage thereon to secure the sum of $4,000. The mortgage contained a provision that the mortgagor should pay "all taxes, charges and assessments which may be imposed by law upon the said mortgaged premises or any part thereof, and in default thereof that it shall be lawful" for the mortgagee "to pay the amount of any such tax, charge or assessment, with any expenses attending the same, and any amount so paid" the mortgagors covenanted to repay, with interest, and that the same should be a lien upon the premises. On the 5th day of May, 1870, Doscher executed another mortgage on the same real estate to the defendant Von Glahn. In December, 1882, Von Glahn commenced an action in the supreme court to foreclose his mortgage, and his action resulted in a foreclosure of the mortgage and a sale of the premises, at which he became the purchaser on the 15th day of March, 1883. On the following day he received a deed and took possession, and has ever since been the owner and in possession of the premises. On the 15th day of March, 1883, Von Glahn informed the plaintiff of his purchase and possession of the premises, and it then insisted upon the payment of its mortgage. On the 9th day of April, 1883, Von Glahn formally tendered to it, absolutely and unconditionally, $5,830, in United States legal tender currency, in payment of its mortgage, which it refused to receive solely upon the ground that the sum was insufficient in amount. The total amount due on its mortgage at the time of the tender was $5,797 and 93–100, unless it was entitled to include therein $58 and 48–100 paid to one Mosscrop, which will be more particularly referred

to hereafter. In May thereafter it commenced this action to foreclose its mortgage.

In his answer Von Glahn alleged as a defense to the action the tender of the amount due upon the mortgage, claiming that such tender operated to release the mortgaged premises from the lien of the mortgage. At the special term this defense was held sufficient, and a judgment was rendered dismissing the complaint. From that judgment the plaintiff appealed to the general term, where the judgment was reversed and a new trial granted, and then the defendant Von Glahn appealed to this court.

It is unnecessary for us to determine precisely what effect the tender of Von Glahn, which was not kept good, had under the circumstances of this case, because there is another ground upon which the decision of the general term can be sustained.

Upon the trial it appeared that there were taxes and water rates for five consecutive years, commencing in the year 1877, and some assessments for grading and paving for a sewer amounting in all to more than $1,000, all charges upon the land, which were due and unpaid, and which the mortgagor had neglected to pay. The plaintiff paid such taxes and assessments, and in reference to such payment the trial court found as follows: " *Twelfth.* That on the said 27th day of June, 1882, the plaintiffs, in order to prevent the accumulation of interest upon said unpaid taxes, water rates and assessments, and in pursuance of the powers and privileges which their said mortgage by the said tax clause therein contained conferred upon them and invested them with, resolved to pay these unpaid liens, but in order to effect such payments at the smallest possible cost, and so that said mortgaged premises should receive the greatest possible benefit therefrom, they still acting by virtue, and in pursuance of said powers and privileges with which they were endued as aforesaid, and so far as one of said assessments was concerned, at the instance, also, of said John H.

Doscher, who continued to be the owner of said mortgaged premises, and was the only person interested therein (except the defendant, Anna L. C. Doscher, his wife), of or as to whom said plaintiffs had any knowledge or information, further resolved that before they paid any one of said unpaid liens, they would submit the matters of the payment of them all to one Thomas D. Mosscrop, a tax searcher in the said city of Brooklyn, so that said Mosscrop might endeavor to reduce, or cancel any item or principal, or interest, or advertising that might be illegally charged in the case of any or either of said unpaid liens, and agreed with the said Mosscrop to pay him twenty-five per cent of the amount he might succeed in having deducted from the entire amount which might be claimed upon said unpaid liens."

In pursuance of his employment Mosscrop examined and investigated each of the taxes, water rates and assessments, saw that proper deductions were made therefrom under the act, chapter 348 of the Laws of 1882, and procured accurate bills of the amounts which should be paid upon the same and took them to the plaintiff which then paid them, and also paid him for his services $58.48, which is the item above referred to which was in dispute between the parties. The plaintiff claims that the sum thus paid to Mosscrop, was an expense within the meaning of the mortgage attending the payment of the taxes, water rates and assessments.

It is not entirely clear what expense was alluded to in the phrase in the mortgage, " with any expense attending the same." If its meaning is doubtful, the doubt may be solved in favor of the mortgagee, as the language is that of the mortgagor. On the part of the defendant, it is claimed that the word expense had reference to penalties, the expenses of redemption from any sale, and other similar expenses attending the taxes, and not an expense attending the ascertainment and payment of them. We think this is ·

too narrow a construction. The word "expense" is quite inapt, and would not naturally be used to cover penalties, and as both mortgagor and mortgagee were at liberty to pay the taxes, and both interested to pay them, it cannot be presumed that the parties contemplated a sale of the premises for non-payment of the taxes and expenses thus made. The mortgage made it the express duty of the mortgagor to make prompt payment of these charges, and authorized payment by the mortgagee only in case of his default. Any expense which by his default he imposed upon the mortgagee was probably within the contemplation of the parties, and it could not have been within their contemplation that the mortgagor could voluntarily omit to pay the taxes, and thus shift from himself to the mortgagee, ignorant of the facts relating to the taxes, the burden of bearing the necessary expense attending their payment. It is just that the mortgagor should bear such expense. Here were numerous taxes, water rates and assessments, under the complicated system of taxation and assessments existing in the city of Brooklyn, charges upon these lands. While the mortgagee had the right to pay for its protection, these charges and add them to its mortgage, yet it could pay only such as were legal and collectible and as the mortgagor was under obligations to pay. Hence, it became important that they should be carefully scrutinized to ascertain how much was due for them, and to protect the mortgagee from any illegal exaction. For that purpose, it was entirely proper for it to employ an expert, acting in good faith, and the reasonable expense of such an expert became a fair charge under this mortgage against the mortgagor, and within its terms a lien upon the mortgaged premises. This construction is neither inconvenient nor under such a mortgage dangerous. The mortgagee must act in good faith, with reasonable judgment, and the expense must be reasonable in amount. When all these concur, there is no reason or equity in imposing the ex-

pense upon the mortgagee and relieving the defaulting
mortgagor and his land therefrom.

We are, therefore, of opinion that the tender was insuf-
ficient in amount and ineffectual, and for this reason the
order of the general term must be affirmed, and judgment
absolute rendered against the appellant upon his stipula-
tion.

All concur (DANFORTH, J., in result), except RUGER.
Ch. J., not voting.